**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KENNETH TYRONE LYNCH, JR.,

     Plaintiff,

v.                                                    Case No. 3:25-cv-1604-MMH-PDB

ANHEUSER-BUSCH COMPANIES,
LLC,

     Defendant.

---

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss or Stay Plaintiff's Corrected Complaint with Prejudice (Doc. 14; Motion), filed March 11, 2026. In the Motion, Defendant, Anheuser-Busch Companies, LLC (A-B), seeks dismissal of the claims Plaintiff, Kenneth Tyrone Lynch, Jr., brings against it in Plaintiffs Corrected Complaint (Doc. 13; Corrected Complaint), filed February 25, 2026. Lynch, who proceeds <u>pro</u> <u>se</u>, timely filed a response in opposition to the Motion. <u>See</u> Plaintiffs Response to Defendant's Motion to

Dismiss Corrected Complaint with Prejudice (Doc. 15; Response), filed March 25, 2026. Accordingly, this matter is ripe for review.[1]

## I.       Procedural Background

Lynch is no stranger to this Court. His efforts to recover on various claims for racial discrimination against A-B (his former employer), two former A-B employees, and the local teamsters chapter (Teamsters Local 947 Union; Teamsters), began over two years ago when he filed his first pro se complaint in the United States District Court for the Middle District of Florida, which was assigned Case No. 3:24-cv-392-MMH-PDB (392 Action). See Complaint for Employment Discrimination (392 Action Doc. 1), filed April 22, 2024. Litigation in the 392 Action proceeded for over a year, much of which centered on Lynch's efforts to file a pleading that complied with the Federal Rules of Civil Procedure (Rule(s)) and this Court's orders. Indeed, the Court struck Lynch's pleading as a "shotgun complaint" twice. See Order (392 Action Doc. 48; 392 Action First Shotgun Order), entered January 7, 2025; Order (392 Action Doc. 60; 392 Action Second Shotgun Order), entered February 24, 2025. Each time, the Court

---

[1] On March 30, 2026, A-B filed a Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Corrected Complaint with Prejudice and Incorporated Memorandum of Law (Doc. 18; Motion for Leave to File a Reply). The dispute A-B identifies in the Motion for Leave to File a Reply is not pertinent to the Court's resolution of the Motion. As such, the Motion for Leave to File a Reply is due to be denied.

instructed Lynch in detail how to file a pleading that complies with the Rules. See generally 392 Action First Shotgun Order; 392 Action Second Shotgun Order. In the end, the Court dismissed Lynch's federal discrimination claims against A-B and Teamsters with prejudice because, despite Lynch's efforts, his Consolidated Fourth (4th) Amended Complaint (392 Action Doc. 63), filed March 24, 2025, remained an impermissible shotgun pleading. See Order (392 Action Doc. 71), entered October 15, 2025.[2] The Court dismissed Lynch's state law claims, which he appeared to bring under the Florida Civil Rights Act (FCRA), "without prejudice to refiling in the appropriate state court." Id. at 8.

On October 28, 2025, Lynch initiated this action by refiling his FCRA claims against A-B in state court. See Complaint (Doc. 3). But A-B removed the action from state court to this Court. See Defendant Anheuser-Busch Companies, LLC's Notice of Removal (Doc. 1), filed December 24, 2025. On February 6, 2026, the Court sua sponte struck the Complaint because it, like Lynch's complaints in the 392 Action, was a shotgun pleading. See Order (Doc. 10; Order Striking the Complaint). In particular, the Court explained that in the Complaint, Lynch "fail[ed] to state which facts he believe[d] support any particular cause of action." Id, at 4. The Court observed that, "other than

---

[2] Lynch had previously amended his pleading to remove the individual defendants. See Consolidated Third (3rd) Amended Complaint (392 Action Doc. 53), filed January 21, 2025.

- 3 -

quoting parts of Florida Statutes section 760.10, Lynch ma[de] no attempt to identify what cause of action he s[ought] to bring." Id. Moreover, Lynch did not separate his claims into different counts—indeed, he did not include any counts, nor identify which facts supported them. Id. at 5. And Lynch failed to include a demand for relief as required by Rule 8. Id. Because the Complaint was an impermissible shotgun pleading and violated the Rules, the Court struck the Complaint and directed Lynch to file a corrected complaint. Id. at 6–7. Lynch filed the Corrected Complaint in an effort to comply with the Order Striking the Complaint.

## II.   The Corrected Complaint

Lynch organizes the Corrected Complaint in five sections. See generally Corrected Complaint. The first, "Nature of the Action," is a single unnumbered paragraph giving a high-level overview of Lynch's history with A-B. Id. at 1–2. The second section, confusingly titled "Factual Background," consists primarily of a block quote of Florida Statutes section 760.10. Id. at 2–3. Lynch also provides some procedural history, explaining that he filed a Charge of Discrimination with the Equal Employment Opportunities Commission

(EEOC) in March 2022, and that he received a right to sue notice on April 11, 2024. Id. Factual Background ¶¶ 1, 2.[3]

The third section, titled "Context," includes the bulk of Lynch's factual allegations. Id. at 3–10. His allegations are set forth in numbered paragraphs in chronological order. Id. Context ¶¶ 1–25.[4] While some of these paragraphs are concise, see, e.g., id. Context ¶ 3, some are long narrations that stretch for half a page or more, see, e.g., id. Context ¶¶ 8, 16.

In brief, Lynch's pertinent allegations appear to be these. In November 2018, Lynch started work as "a weekender" in A-B's plant in Cartersville, Georgia. Id. Context ¶ 1. He transferred to the facility in Jacksonville, Florida, in February 2021. Id. Context ¶ 3. In April 2021, Lynch requested additional training on equipment to increase his chances of moving to a full-time position. Id. Context ¶ 4. His request was ignored, but "Caucasian new hires were chosen to participate in additional training, and earn more hours, even though they had less experience and tenure." Id. In July 2021, Lynch "requested to be

---

[3] The Court will refer to the individual paragraphs in the Corrected Complaint by both section title and paragraph number because Lynch restarts the numbering of his paragraphs at the beginning of each new section.

[4] In paragraph 15, Lynch includes an allegation about an event that took place on "October 11, 2020" between allegations about events occurring on September 30 and December 11, 2021. See Corrected Complaint Context ¶ 15. Considering that Lynch alleges he did not start working at the facility in question until February 2021, id. Context ¶ 3, the Court concludes that the reference to October 11, 2020, is a mistake and the correct date is October 11, 2021.

mentored[] in the mentoring program," and he received no response except for a confirmation from Stephen Vincent, assistant HR manager, that his request was received. Id. Context ¶¶ 5, 11. His efforts to advance at A-B were fruitless again on August 17, 2021, when he was denied an interview for an apprentice position. Id. Context ¶ 6.

In August 2021, Cooper McGee, another weekender, started calling Lynch "boy," which is "a racist term to degrade people of color." Id. Context ¶ 7. On August 21, 2021, Cris Sprouse, an apprentice, yelled "fuck you" at Lynch and put his hand in Lynch's face when Lynch approached him to relieve him from a case-packer. Id. Context ¶ 8. Lynch immediately reported Sprouse to supervisors, but A-B management and Teamsters "ignore[d] Lynch's complaint." Id. The next day, Lynch emailed Zachary Beston, a "Regional People Supervisor," "taking issue in regards to racism, bullying, and discrimination at the Jacksonville facility." Id. Context ¶ 10. On August 24, 2021, Vincent emailed Lynch "insisting on meeting[] to discuss discrimination[] and harassment." Id. Context ¶ 11. Beston, Vincent, and Lynch met the next day. Id. Context ¶ 12. Lynch told them that McGee was calling him "boy." Id. The next week, on September 1, 2021, Vincent and Beston called Lynch and "threatened [his] weekender position [two] times, '[i]f there w[ere] any more issues.'" Id. Context ¶ 13.

- 6 -

According to Lynch, he "had great reviews, perfect attendance, and accolades from co-workers[] and management alike." Id. Context ¶ 15. Nevertheless, on September 30, 2021, when Lynch "again requested … on the job training," he was ignored. Id. ¶ 14. He did the same on October 11, 2021, and again was ignored. Id. Context ¶ 15. On December 11, 2021, Lynch emailed Vincent "requesting [an] interview for [an] apprentice position." Id. Context ¶ 16. Vincent told Lynch that he "had some issues with [his] co-workers in the past" which needed to "be worked out" before Lynch could "move forward." Id. Vincent told Lynch he would not be getting an interview. Lynch asked Vincent what he should do if someone called him "boy" and Vincent said, "[i]f there are any more issues, you will be removed from the program. [Sprouse] and [McGee] said you were disrespectful." Id. Lynch asked Vincent if he was "not getting [an] interview because he reported" their "discrimination" and Vincent said, "yeah." Id. Lynch "followed up th[is] conversation" by emailing "management at [A-B]," alerting them "that he would file a charge" with the Equal Employment Opportunities Commission (EEOC) for discrimination and retaliation. Id.

On December 21, 2021, Vincent called Lynch and told him he was "suspended indefinitely, pending an investigation." Id. Context ¶ 18. A-B terminated Lynch on March 11, 2024. Id. Context ¶ 24.

In the fourth section of the Corrected Complaint, "Statement of Claims," Lynch appears to attempt to identify the causes of action he intends to bring against A-B. Id. at 11–12. He alleges that: (1) A-B violated Florida Statutes section 760.10(1)(a) because he "was qualified for numerous positions during his employment, but was terminated, and replaced by members outside his protected class," id. Statement of Claims ¶ 1; (2) A-B violated section 760.10(7) because, in response to him opposing a practice "that he in good faith believed was in violation of" state and federal employment discrimination laws, A-B "took multiple adverse employment actions against him," id. Statement of Claims ¶ 2; (3) A-B violated section 760.10(1)(b) because it "knowingly allowed" Lynch to be threatened, called "boy," and cursed out, and then threatened Lynch that he "would be discharged[] if he reported any more incidents of discrimination," id. Statement of Claims ¶ 3; and (4) A-B violated section 760.10(4) because A-B offered training and interviews to others outside Lynch's protected class even though they had "less tenure, qualifications, and experience," id. Statement of Claims ¶ 4. According to Lynch, A-B has engaged in each of these violations "[s]ince at least August 17, 2021." Id. Statement of Claims ¶¶ 1–4.

In the fifth section of the Corrected Complaint, Lynch requests judgment in his favor, an award of back wages and other damages, and reinstatement. Id. at 12–13.

### III.    Discussion

A-B contends that this action must be dismissed with prejudice under Rule 12(b)(6) because the Corrected Complaint is an impermissible shotgun pleading. See Motion at 7–10. Upon review, the Court concludes that, although it is an improvement over Lynch's previous pleadings, the Corrected Complaint is a shotgun pleading that is due to be stricken. However, in an abundance of caution, the Court will sua sponte grant Lynch **one final opportunity** to file an amended corrected complaint that complies with the pleading rules rather than dismiss this action on the merits under Rule 12(b)(6). Lynch is cautioned that if he fails to file a pleading that complies with the Rules and this Court's Orders, **this action will be dismissed with prejudice without further notice.**

In the Order Striking the Complaint, the Court explained in detail the requirements of the Rules and the Eleventh Circuit's prohibition of shotgun pleadings. See Order Striking the Complaint at 1–5. Rather than repeat the authority discussed there, the Court advises Lynch to carefully study that order

and writes here to explain the specific deficiencies Lynch repeats in the Corrected Complaint.

As a preliminary matter, the Court observes that, in drafting the Corrected Complaint, Lynch violates Rule 10(b), which requires that each numbered paragraph of allegations be "limited as far as practicable to a single set of circumstances." See Fed. R. Civ. P. 10(b). Some of Lynch's paragraphs stretch for several sentences and combine allegations involving different individuals, different locations, and different conduct. See, e.g., Corrected Complaint Context ¶¶ 8, 16. Combining such facts into a single paragraph in this manner makes the Corrected Complaint more difficult to understand and makes it more difficult for A-B to frame a response. When drafting his amended corrected complaint, Lynch must separate his factual allegations into separately numbered paragraphs that are limited to "a single set of circumstances."

In the Order Striking the Complaint, the Court determined that Lynch's Complaint fell "into the second category of shotgun pleadings because it [wa]s 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.'" Id. at 4 (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322 (11th Cir. 2015)). Indeed, the Court noted that Lynch "fail[ed] to state which facts he believe[d] support[ed] any particular

cause of action" and made almost no attempt "to identify what cause of action he s[ought] to bring." Id. In the Corrected Complaint, Lynch takes a step toward correcting this deficiency by identifying four specific statutory subsections in his Statement of Claims section. See Corrected Complaint Statement of Claims ¶¶ 1–4 (citing statutory subsections giving rise to claims for racial discrimination, retaliation, disparate impact, and discrimination in hiring).[5] He also attempts to give A-B notice of the particular acts he contends form the basis of each claim. See, e.g., id. Statement of Claims ¶ 1 ("[Lynch] was qualified for numerous positions during his employment, but was terminated, and replaced by members outside his protected class."). However, these statements are largely unhelpful because they are vague, Lynch does not refer to particular allegations to support them, and even this statement combines different claims

---

[5] Lynch identifies his claims by subsection of Florida Statutes section 760.10. The subsections he identifies prohibit racial discrimination in hiring, firing, and terms and conditions of employment, see Fla. Stat. 760.10(1)(a) (2026); retaliation for opposing the unlawful employment practices set forth in section 760.10, see Fla. Stat. 760.10(7); employment practices with a disparate impact on individuals because of race, see Fla. Stat. 760.10(1)(b); and racial discrimination in training and apprenticeship programs, see Fla. Stat. 760.10(4). In seeking dismissal of Lynch's claims, A-B characterizes section 760.10(1)(b) as prohibiting discrimination in hiring. See Motion at 9–11. That is inaccurate. Although the wording of section 760.10(1)(b) is somewhat confusing, the provision prohibits employment practices that have disparate impacts on employees because of race. See E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 771 (2015) (construing a substantively identical provision in Title VII of the Civil Rights Act of 1964 as a disparate impact provision); Phelps v. Lee Cnty., No. 2:21-cv-121-JLB-MRM, 2021 WL 5826235, at *5 (M.D. Fla. Dec. 8, 2021) (citing section 760.10(1)(b) as the FCRA's disparate impact provision).

(failure to promote and discriminatory termination). Additionally, while the statutory provision Lynch cites in his third claim prohibits disparate impact in hiring practices, the circumstances he references in that claim sound in both discrimination and retaliation. Id. Statement of Claims ¶ 3. Discrimination and retaliation, however, are separate claims from disparate impact and from one another. Jumbling his claims together in this manner makes it impossible for A-B and the Court to discern which claim is which. When drafting an amended corrected complaint, Lynch must ensure that his discrimination, retaliation, and disparate impact claims are clearly separated from one another. See Amaya v. Vilsack, No. 23-cv-22838-Altman/Reid, 2024 WL 1285162, at *3 (S.D. Fla. Mar. 26, 2024) (admonishing the plaintiff for "shift[ing] between different theories of [Title VII] liability—sometimes even in the same sentence").[6]

Further, by stating that A-B's violations as to each of his claims have been ongoing "[s]ince at least August 17, 2021," see Corrected Complaint Statement of Claims ¶¶ 1–4, Lynch further muddies the waters and makes it impossible for A-B to determine which allegedly wrongful acts form the basis of which claim. August 17, 2021, is the first date on which A-B allegedly denied Lynch

---

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

an interview for an apprentice position. Id. Context ¶ 6. Lynch's identification of claims simply with a "start date" is confusing because A-B, and the Court, must sift through all that came after that date in an attempt to guess which allegedly wrongful acts support which claims. Moreover, August 17, 2021, predates any of Lynch's alleged discussions with A-B about discrimination, id. Context ¶ 10, so it is entirely unclear how this date could be the start date for the retaliation claim in paragraph two.

By failing to identify which of his facts support which of his claims, Lynch forces A-B and the Court to wade through his morass of factual allegations to attempt to discern the basis of his claims. But it is Lynch's responsibility to identify the basis of each of his claims with sufficient precision to permit A-B and the Court to understand it. In short, Lynch fails to put A-B on notice of the factual basis supporting the claims against it because he simply recites his entire employment history and then cites four statutory subsections without stating which of A-B's actions support which claim. This manner of pleading is what gives "shotgun pleadings" their name. Lynch shoots indiscriminately and leaves it to A-B and the Court to determine what, if anything, hits his mark. As such, the Corrected Complaint is due to be stricken and the Court will give

Lynch one final opportunity to file a proper pleading.[7] When drafting his amended corrected complaint, Lynch must clarify with greater specificity which of the numerous perceived wrongs he alleges form the basis for which of his claims.[8]

---

[7] In the Response, Lynch contends that the Corrected Complaint satisfies the pleading standard "because it states a claim [upon] which relief can be granted." See Response at 9. Lynch cites Seneschal v. E. Bay Marine Servs., LLC, No. 8:25-cv-2253-JSM-LSG, 2025 U.S. Dist. LEXIS 221437, at *3 (M.D. Fla. Nov. 10, 2025), apparently for the decision's discussion of the Twombly and Iqbal pleading standard. See Response at 9; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). Lynch appears to argue that his factual allegations suffice to state claims under Twombly and Iqbal, and he identifies factual allegations that he contends support each of his claims. See Response at 9–20. But Lynch makes no attempt to rebut A-B's characterization of the Corrected Complaint as an impermissible shotgun pleading, and, as such, his arguments are not responsive to the issues relevant to resolving the Motion.

Like Lynch, A-B evaluates the Corrected Complaint in terms of the Twombly and Iqbal framework for failure to state a claim. See Motion at 7–10. Because Lynch and A-B both appear to misunderstand the difference between shotgun pleading and the Twombly and Iqbal pleading standards, the Court emphasizes that shotgun pleadings are not evaluated under the Rule 12(b)(6) standard. Indeed, the issue of whether a complaint is a shotgun pleading is conceptually and legally distinct from the issue of whether the plaintiff states a claim. See Wagner v. First Horizon Pharma. Corp., 464 F.3d 1273, 1280 (11th Cir. 2006) ("It is not that we know that plaintiffs cannot state a claim but rather that we do not know whether they have."). Failing to adequately link a pleading's factual allegations with its causes of action "sound[s] more clearly in Rule 12(e)'s remedy of ordering repleading for a more definite statement of the claim, rather than in Rule 12(b)(6)'s remedy of dismissal for failure to state a claim." Pop v. LuliFama.com LLC, 145 F.4th 1285, 1298–99 (11th Cir. 2025) (quoting First Horizon, 464 F.3d at 1280). As such, the Eleventh Circuit has noted that a district court's authority to dismiss claims on shotgun pleading grounds arises under the court's inherent authority rather than under Rule 12(b)(6). Weiland, 792 F.3d at 1320.

[8] The Court also notes that although Lynch brings a disparate impact claim, see Corrected Complaint Statement of Claims ¶ 3, the Court can discern no facts that would support such a claim. When drafting his amended corrected complaint, Lynch may more easily be able to satisfy the pleading requirements by focusing on the claims that might arguably be supported by his facts.

- 14 -

Accordingly, it is

**ORDERED:**

1.  Defendant's Motion to Dismiss or Stay Plaintiff's Corrected Complaint with Prejudice (Doc. 14) is **GRANTED** to the extent the Court finds that Kenneth Tyrone Lynch, Jr.'s Corrected Complaint (Doc. 13) is an impermissible shotgun pleading. In all other respects, the Motion is **DENIED WITHOUT PREJUDICE**.

2.  A-B's Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Corrected Complaint with Prejudice and Incorporated Memorandum of Law (Doc. 18) is **DENIED**.

3.  Lynch's Corrected Complaint (Doc. 13) is **STRICKEN**.

4.     On or before **June 26, 2026**, Lynch shall file an amended corrected complaint that complies with all pleading rules and the directives of this Order. Failure to do so **will result in the dismissal of this action without further notice**.

**DONE AND ORDERED** in Jacksonville, Florida this 27th day of May, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

lc33

Copies to:
Pro Se Party
Counsel of Record

- 16 -